## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GROHS, | HONORABLE JEROME B. SIMANDLE |
| Petitioner, | |
| v. | Civil Action No. 15-8024 (JBS) |
| ADMINISTRATOR OF THE SPECIAL TREATMENT UNIT, et al., | |
| Respondents. | **OPINION** |

**APPEARANCES:**

Steven Grohs, Pro Se
594, Special Treatment Unit, South
Avenel, New Jersey 07001

Mark D. McNally, Deputy Attorney General
Office of the New Jersey Attorney General
New Jersey Department of Law & Public Safety
Division of Law, Health & Human Services Section
P.O. Box 112, 25 Market Street
Trenton, New Jersey 08625
    Attorney for Respondents

**SIMANDLE, District Judge:**

## I.    INTRODUCTION

Steven Grohs ("Grohs") has submitted a petition

("Petition") for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. (ECF 1.) Grohs completed his term of imprisonment for the

crime of attempted luring and enticing a child, and he has been

civilly committed since 2011 as a sexually violent predator. The

Administrator of the Special Treatment Unit and the Attorney

General of the State of New Jersey (collectively, "Respondents") oppose the Petition. (Answer, ECF 19.)

In this Petition, Petitioner challenges his prior criminal conviction, alleging ineffective assistance of counsel in pleading guilty without understanding the risk of a subsequent civil commitment. The principal issues to be determined are: (1) whether Petitioner, challenging his 2009 criminal conviction, for which imprisonment ended in 2011, satisfies the "in custody" requirement of § 2254 by his present civil commitment; and (2) whether, assuming the existence of § 2254 jurisdiction, the state court's rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or an unreasonable application of, the governing federal precedent in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny.

For the reasons stated herein, the Petition shall be denied and no certificate of appealability shall issue.

## II.  **BACKGROUND**

In September 2008, Petitioner was indicted in Camden County, New Jersey, on fifteen counts of luring a child, criminal sexual contact, child welfare endangerment, and related offenses arising from his contact with a 14-year-old boy when Grohs was 42. (ECF 19-3.)

On December 15, 2008, Petitioner entered a guilty plea to a charge of Attempted Luring or Enticing a Child in violation of

N.J. Stat. Ann. § 2C:13-6. (ECF 19-4.) Represented by counsel,

Petitioner executed a plea form, setting forth the conditions of

his guilty plea (*id.* at 1-4), as well as a supplemental plea

form concerning the civil commitment implications of his guilty

plea to sexual offense charges ("Supplemental Form"). (*Id.* at 5-

8.)

The Supplemental Form's "Civil Commitment" section

provided:

> Do you understand that if you are convicted
> of a sexually violent offense, such as
> aggravated sexual assault, sexual assault,
> aggravated criminal sexual contact,
> kidnapping under 2C:13-1(c)(2)(b), criminal
> sexual contact, felony murder if the
> underlying crime is sexual assault, an
> attempt to commit any of these offense, or
> any offense for which the court makes a
> specific finding on the record that, based
> on the circumstances of the case, the
> offense should be considered a sexually
> violent offense, you may upon completion of
> your term of incarceration, be civilly
> committed to another facility if the court
> finds, after a hearing, that you are in need
> of involuntary civil commitment?

(*Id.* at 8 ("Civil Commitment Provision").) Petitioner circled

the answer "YES" directly next to this section. (*Id.*) He signed

and dated the bottom of this form. (*Id.*)

On December 15, 2008, the Law Division of the Superior

Court of New Jersey ("Law Division") held Petitioner's plea

hearing. (ECF 19-5.) At the hearing's commencement, an Assistant

Camden County prosecutor, Christine Shah, noted on the record

that she and Petitioner had executed the final page of the plea form and that he had circled the "Yes," to the Civil Commitment Provision. (*Id.* at 3.) The trial judge, the Honorable Lee A. Solomon, J.S.C., now Justice of the New Jersey Supreme Court, discussed the plea with Petitioner, affording him the opportunity to ask questions of counsel and the court. (*Id.* at 4.) Petitioner's responses to Judge Solomon's questions on the record demonstrated that: Petitioner spoke to his counsel, Leslie Jackson, Esquire, before accepting the plea (*id.* at 5); Petitioner had received the opportunity to ask her all of his questions (*id.*); Ms. Jackson answered all of Petitioner's questions (*id.*); Petitioner had no further questions for Ms. Jackson, Ms. Shah, or Judge Solomon (*id.*); and Petitioner was satisfied with Ms. Jackson's representation. (*Id.* at 6.)

Judge Solomon established on the record that Petitioner understood the significance of his guilty plea and that he accepted the factual basis for his plea. (*Id.* at 6-7) (asking Petitioner's awareness of, *inter alia*, the fact he would give up certain federal and state constitutional rights by virtue of his guilty plea). Judge Solomon further questioned Petitioner as follows:

> COURT: You're pleading guilty here today, are you doing so of your own free will?
>
> GROHS: Yes, Your Honor.

> COURT: Nobody threatened you, coerced you or
> forced you in any way to plead guilty?
>
> GROHS: No, sir.
>
> COURT: And once again, you've had a chance
> to speak to Ms. Jackson?
>
> GROHS: Yes, sir.
>
> COURT: And you're satisfied with the way
> she's represented you in this matter?
>
> GROHS: Absolutely, Your Honor.

(*Id.* at 8.)

In response to Judge Solomon's questions, Petitioner also expressly testified that he reviewed the plea form with Ms. Jackson and that he understood all of its contents. (*Id.*)

Judge Solomon then discussed the civil commitment implications of Petitioner's guilty plea. Specifically, Judge Solomon noted that a petition for civil commitment could be filed in the future, and both Petitioner and Ms. Jackson acknowledged this fact. (*Id.* at 8-9.)

On February 20, 2009, and pursuant to his guilty plea, Petitioner was convicted of Attempted Luring or Enticing a Child. He was sentenced to five years' imprisonment, with 728 days of jail credit. (ECF 19-6; ECF 19-7.) Accordingly, Petitioner's incarceration for this criminal conviction would run until February 22, 2012.

On February 22, 2011, the Attorney General of the State of New Jersey petitioned the Law Division to involuntarily civilly commit Petitioner as a sexually violent predator under New Jersey's Sexually Violent Predator Act, N.J. Stat. Ann. § 30:4-27.24 to -.38 ("SVPA"). (ECF 19-8.)

On February 24, 2011, the Superior Court of New Jersey, Law Division, Cumberland County, involuntarily civilly committed Petitioner to the Special Treatment Unit ("STU") in Avenel, New Jersey. (ECF 19-9.) The Honorable Richard J. Geiger civilly committed Petitioner pursuant to N.J. Stat. Ann. § 30:4-27.24, *et seq.*, which provides, in pertinent part:

> Certain individuals who commit sex offenses suffer from mental abnormalities or personality disorders which make them likely to engage in repeat acts of predatory sexual violence if not treated for their mental conditions ... [Therefore, there is a] need for commitment of those sexually violent predators who pose a danger to others should they be returned to society ... If the court finds that there is probable cause to believe that the person is a sexually violent predator in need of involuntary commitment, it shall issue an order setting a date for a final hearing and authorizing temporary commitment to a secure facility designated for the custody, care and treatment of sexually violent predators pending the final hearing.

N.J. Stat. Ann. § 30:4-27.25, § 30:4-27.28. Petitioner's civil
commitment[1] in 2011 to the STU followed expiration of
Petitioner's criminal incarceration imposed in 2009.

On June 14, 2011, Grohs filed a petition for post-
conviction relief ("PCR") pertaining to his 2009 criminal guilty
plea and sentence. (ECF 19-10.) On August 25, 2011, Petitioner
was assigned PCR counsel to represent him. (ECF 19-11.) On
January 25, 2012, Petitioner's PCR counsel filed his brief in
support of PCR, asserting that trial counsel rendered
ineffective assistance for not notifying Petitioner of the civil
commitment ramifications of his guilty plea. (ECF 19-12.)

On July 26, 2013, following oral argument and supplemental
briefing, the trial court denied PCR in an oral decision. (ECF
19-18.) In her findings of fact, the Honorable Michele M. Fox,
J.S.C. noted that: Petitioner had circled "yes" next to the
Civil Commitment Provision; he testified under oath that he had
reviewed the plea form in its entirety and understood it; and

---

[1] On August 22, 2014, Petitioner filed with this Court a petition
for habeas corpus relief under 28 U.S.C. § 2254 challenging the
Law Division's order for his civil detention. *Grohs v.
Administrator of the Special Treatment Unit*, No. 14-5268. (No.
14-cv-5268, ECF 3 at 2.) On March 27, 2018, this Court denied
that habeas petition with prejudice and denied a certificate of
appealability. (No. 14-cv-5268, ECF 14 and ECF 15.) Petitioner
states that the judgment challenged in his instant habeas
Petition is the Camden County Law Division's December 15, 2008
criminal judgment against him (No. 15-cv-8024, ECF 1 at 2; ECF
20-2 at 26), and not his ongoing order for civil commitments.

the prosecutor had made special note of civil commitment during his plea hearing. (*Id*. at 15-16.) Finding that Petitioner had failed to establish a prima facie case of ineffective assistance of counsel ("IAC") in accordance with *Strickland v. Washingt*on, 466 U.S. 668 (1984), Judge Fox determined that Petitioner was not entitled to an evidentiary hearing as to his ineffective assistance of counsel claim. (*Id*. at 17-18.)

On November 26, 2013, Petitioner directly appealed the Law Division's July 26, 2013 Order. (ECF 19-20.) Petitioner's April 21, 2014 appellate brief argued that the trial court had established only that he understood the plea form generally and not necessarily the civil commitment consequences of his plea. (ECF 19-21 at 14-15.)

On January 28, 2015, the Appellate Division of the Superior Court of New Jersey ("Appellate Division") affirmed the Superior Court's denial of Petitioner's PCR application. (ECF 19-23.)

On February 19, 2015, Petitioner sought certification of the Appellate Division's January 28, 2015 ruling. (ECF 19-24, ECF 19-25, ECF 19-26.) On March 19, 2015, Petitioner withdrew that petition for certification (ECF 19-28, ECF 19-29), and instead filed an April 1, 2015 motion for reconsideration with the Appellate Division. (ECF 19-30.)

On May 6, 2015, the Appellate Division denied Petitioner's motion for reconsideration. (ECF 19-31.)

On May 13, 2015, Petitioner again filed a petition for certification with the New Jersey Supreme Court as to the Appellate Division's January 28, 2015 decision. (ECF 19-32, ECF 19-33.) On October 9, 2015, the New Jersey Supreme Court denied Petitioner's petition for certification. (ECF 19-35.)

On November 10, 2015, Petitioner filed the present § 2254 habeas Petition with this Court. (ECF 1.)

By Order entered January 13, 2016, this Court construed the sole claim of the Petition as raising "th[e] issue whether Petitioner's trial counsel rendered ineffective assistance of counsel for failing to advise him adequately of the civil commitment consequences of his plea" (referred to as Petitioner's "IAC Claim"). (ECF 7.)

On April 13, 2016, Respondents filed a Notice of Change in Petitioner's Custody Status. The criminal incarceration challenged by the sole count of Petitioner's Petition ended on or about February 22, 2011, when he was civilly committed to the STU, as noted above. (ECF 17.) Respondents thereafter filed a response to the Petition (ECF 19), and Petitioner filed his reply. (ECF 20.)

Having reviewed the submissions of the parties, the Court now denies the Petition and denies a Certificate of Appealability, for the reasons explained below.

## III. <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody, pursuant to the judgment of a state court, "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). "[A] state-court decision is an unreasonable application of clearly established precedent if it correctly identifies the

governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). Habeas courts must presume that state court factual findings are correct unless petitioners rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. <u>ANALYSIS</u>

### A. Habeas Jurisdiction

In their Answer to the Petition, Respondents suggest that the Petition fails 28 U.S.C. § 2254(a)'s habeas jurisdictional requirement that Petitioner must have been "in custody" at the time he filed the Petition. (ECF 19-1 at 18-19.) Petitioner challenges Respondents' contention, arguing that his civil commitment satisfies § 2254(a)'s requirement. (ECF 20 at 5; ECF 20-2 at 42-48.) The record before this Court indicates that Petitioner fails to meet the jurisdictional "in custody" requirement.

#### 1. The Petition As A Challenge To Petitioner's 2009 Criminal Conviction

The Petition herein indicates this is a challenge to the criminal conviction for attempting to lure a child upon which Petitioner was sentenced on February 20, 2009. (ECF 1 at ¶¶ 1-5.) Petitioner's Reply brief likewise claims that the Petition challenges his February 2009 criminal conviction. (ECF 20-2 at

26 ("It is that underlying criminal conviction which Petitioner is challenging in this action").) His five-year incarceration from that conviction expired on or about February 24, 2011, when his imprisonment ended and his present civil commitment as a sexually violent predator began.

Petitioner was no longer incarcerated at South Woods State Prison when he filed his § 2254 Petition on November 6, 2015, but was instead civilly committed at the STU at Avenel.

Accordingly, to the extent the Petition is challenging Petitioner's criminal conviction, he was not "in custody" for purposes of § 2254(a) at the time the Petition was filed.

### 2. The Petition As A Challenge To Petitioner's 2011 Civil Commitment

While Petitioner's filings make clear that he is challenging his 2009 criminal conviction, for purposes of completeness this Court also notes that Petitioner cannot challenge his 2011 civil commitment in this proceeding, as: (1) the Petition did not comply with 28 U.S.C. § 2244(b)(3)(A); and (2) Petitioner's civil commitment was a collateral, not direct, consequence of his criminal conviction.

*Second or successive habeas application under 28 U.S.C. § 2244(b)(3)(A)*: Petitioner challenged his February 24, 2011 civil commitment with his § 2254 petition before this Court in *Grohs v. Administrator of the Special Treatment Unit*, No. 14-5268.

(No. 14-cv-5268, ECF 3 at 2.) See n.1, *supra*. On March 27, 2018, this Court denied that habeas petition with prejudice and denied a certificate of appealability. (No. 14-cv-5268, ECF 14 and ECF 15.)

Petitioner has not sought authorization from the Third Circuit Court of Appeals to file a second or successive habeas application challenging his civil commitment. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application").

Accordingly, to the extent the Petition is challenging Petitioner's February 24, 2011 civil commitment to the STU, he has not obtained the requisite § 2244(b)(3)(A) clearance from the Third Circuit for a second or successive petition. While there are some references to Petitioner's ongoing civil commitment, it is clear as a matter of law that he cannot challenge that a second time.

*Petitioner's civil commitment was a collateral consequence of his criminal conviction*: Here, the criminal conviction did not impose a period of civil commitment, which was achieved after a separate civil proceeding, in accordance with New Jersey's Sexually Violent Predator Act, *supra*. Courts have

13

relied on the distinction between the direct consequences of a criminal conviction and its collateral consequences for purposes of the "in custody" requirement of habeas jurisdiction. *See*, *e.g.*, *Stanbridge v. Scott*, 791 F.3d 715, 719 (7th Cir. 2015) (a limitation is a direct consequence of a conviction if it is "imposed by the sentencing court as part of the authorized punishment, and included in the court's judgment," whereas collateral consequences of judgments are "not included in the court's judgment, no matter whether the consequence is imposed on a person automatically upon conviction or serves as a necessary predicate for a subsequent determination by a court or administrative agency on grounds related to the conviction"); *Piasecki v. Court of Common Pleas of Bucks Cty.*, No. 2016 WL 11448939, at *3 (E.D. Pa. Apr. 21, 2016) (citing cases). In *Stanbridge*, the petitioner was civilly confined pursuant to the Illinois Sexually Violent Persons Commitment Act after he had already served his full criminal sentence on his sexual abuse conviction. *See* 791 F.3d at 716. In that case, similar to the instant case, the petitioner challenged his criminal conviction, not his civil confinement. *See id.* Ultimately, the Seventh Circuit determined that petitioner was not "in custody" pursuant to his sexual abuse conviction, but rather he was "in custody" on his civil commitment. *See id.* at 720-21. The Seventh Circuit held that Stanbridge's "restraint is not a direct consequence of

14

his criminal conviction. Rather, his civil commitment is clearly a collateral consequence of his criminal conviction, as it was not part of the judgment in the criminal case. *See id.* at 721 (citations omitted).

In this case, similar to *Stanbridge*, Petitioner's civil commitment to the STU is a collateral -- not direct -- consequence of his February 20, 2009 criminal conviction. The commitment was *not* imposed by the sentencing court and was *not* included in the court's judgment. (ECF 19-6.) Given that a habeas petitioner is not "in custody" pursuant to a particular limitation "unless his physical liberty of movement is limited in a non-negligible way *and* that limitation is a *direct* consequence of the challenged conviction," *Stanbridge*, 791 F.3d at 719 (emphasis added), Petitioner was not, at the time he filed the Petition, "in custody" with respect to a challenge to his criminal conviction and judgment.

Petitioner's citation (ECF 20-2 at 26) to *Bosner v. Dist. Attorney of Monroe Cty.*, 659 F. App'x 126 (3d Cir. 2016) does not alter this finding. In *Bosner*, the petitioner sought habeas relief on his criminal conviction for unlawful contact with a minor. *See* 659 F. App'x at 127. As a result of this conviction, Bosner had to register as a sex offender. *Id.* His failure to register led to a conviction and imprisonment, such that Bosner was "in custody" because he failed to comply with a condition

arising from his initial criminal conviction. Ultimately, a
Third Circuit panel noted that sex offender registration
requirements do not constitute a "physical restraint" and do not
satisfy the "in custody" requirement of § 2254. The Third
Circuit affirmed the District Court in finding that Bosner was
not "in custody" on the expired sentence of imprisonment for
unlawful contact with a minor. *See Bosner*, 659 F. App'x at 129.

Nevertheless, and also for purposes of completeness, even
if this Court were to find that Petitioner was "in custody" on
his criminal conviction, his federal habeas claim fails on the
merits for the reasons described *infra*.

**B.    Petitioner's IAC Claim**

As noted above, Petitioner's IAC Claim is the sole ground
asserted in his Petition.

The PCR court rejected Petitioner's IAC Claim. In rendering
the court's decision, Judge Fox meticulously detailed the
testimony that Petitioner had given at his plea hearing
regarding his counsel's assistance and his understanding of his
plea's implications. Judge Fox noted the following:

> At the plea hearing Prosecutor Shah stated
> to the court in the presence of the
> defendant and the defendant's attorney, Ms.
> Jackson, "the defendant also circled yes to
> the paragraph that explains civil commitment
> so I believe that's everything, Judge." Plea
> transcript at page 5.

The defendant was placed under oath and Judge Solomon colloquied the defendant ... Judge Solomon explained to the defendant that if he accepted the defendant's plea and the defendant was released from state prison after three years the defendant would then be on parole, supervision for life and would be required to register as a sex offender pursuant to Megan's Law. The defendant responded that he understood. Plea transcript at pages 8 to 9. *The defendant answered affirmatively when asked by Judge Solomon if he had had an opportunity to ask questions of Ms. Jackson, whether Ms. Jackson had answered all of the defendant's questions, whether the defendant had any questions of Ms. Jackson, Prosecutor Shah, or the court, and if the defendant was satisfied with Ms. Jackson's representation*. Plea transcript at pages 9 to 10.

The following exchange then occurred between Judge Solomon and the defendant with respect to the plea form and supplemental plea form:

Judge: So there's a plea form and then there are four additional pages comprising supplemental plea forms. Do you see all those?

Defendant: Yes, Judge.

Judge: *Did you have a chance to go over them with your attorney*?

Defendant: *Yes, Judge*.

Judge: *Do you understand everything on those forms*?

Defendant: *Yes, sir*.

Judge: *Did you provide Ms. Jackson the information she used to answer the questions on those forms*?

Defendant: *Yes, sir*.

> Judge: Did you initial and sign, actually initial pages one, two and three of the plea form, sign page four of the plea form, and sign, I believe you signed each of the supplemental plea forms on the four pages?
>
> Ms. Jackson: Judge, I had him initial pages one through three on the supplemental.
>
> Judge: And sign page four. *Did you initial and sign each of those pages to indicate that you understood everything on those pages*?
>
> Defendant: *Yes, Judge*.
>
> Judge: Did you initial and sign each of those pages to indicate that all the answers given are true and correct?
>
> Defendant: Yes, Judge.
>
> Judge: If I were to ask you each and every question as it appears on the four page plea form and on the four page supplemental plea form, would your answers be the same answers that appear on the plea form and the supplemental plea form?
>
> Defendant: Yes, sir. Plea transcript at pages 15 to 16.

(ECF 19-18 at 5-6 (emphasis added).)

With respect to Petitioner's IAC Claim -- "that Ms. Jackson failed to advise him of the consequence of civil commitment upon completion of his sentence" (*id*. at 12) -- Judge Fox found that Petitioner had not established either of the two requisite prongs for IAC claims as set forth in *Strickland v. Washingto*n, 466 U.S. 668 (1984). (*Id*. at 15-17.)

The Appellate Division affirmed the PCR trial court's decision "for the reasons stated in Judge Michele M. Fox's thorough oral decision of July 26, 2013." (ECF 19-23 at 1.) The Appellate Division then "add[ed] the following[:] [...] The record clearly supports that defendant was made aware of the potential civil commitment in accord with [*State v.*] *Bellamy*[,] [178 N.J. 127, 136-40 (2003)]." (*Id.* at 4.)

Petitioner's IAC Claim in the Petition fails because the state courts' rulings were neither contrary to, nor an unreasonable application of, United States Supreme Court precedent.

The Supreme Court set forth the standard by which courts must evaluate IAC claims in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requirement involves demonstrating that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, the defendant must show that he was prejudiced by the deficient performance. *Id*. This requires showing that counsel's errors deprived the defendant of a fair trial. *Id*.

As to *Strickland*'s first prong, counsel's performance is deficient if his or her representation falls "below an objective standard of reasonableness" or outside of the "wide range of

professionally competent assistance." *Id*. at 690. In examining

the question of deficiency, "[j]udicial scrutiny of counsel's

performance must be highly deferential." *Id.* at 689. In

addition, judges must consider the facts of the case at the time

of counsel's conduct, and must make every effort to escape what

the *Strickland* court referred to as the "distorting effects of

hindsight." *Id*.

As to *Strickland*'s second prong, a defendant must show a

reasonable probability that, but for counsel's errors, the

result of the proceeding would have been different. *Id*. at 694.

The petitioner bears the burden of showing that counsel's

challenged action was not sound strategy. *Kimmelman v. Morrison*,

477 U.S. 365, 381 (1986).

"With respect to the sequence of the two prongs, the

*Strickland* Court held that 'a court need not determine whether

counsel's performance was deficient before examining the

prejudice suffered by the defendant as a result of the alleged

deficiencies ... If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should

be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir.

2010) (quoting *Strickland*, 466 U.S. at 697)).

When assessing an IAC claim in the federal habeas context,

"[t]he pivotal question is whether the state court's application

of the *Strickland* standard was unreasonable," which "is
different from asking whether defense counsel's performance fell
below *Strickland*'s standard." *Grant v. Lockett*, 709 F.3d 224,
232 (3d Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86,
101 (2011)). "A state court must be granted a deference and
latitude that are not in operation when the case involves
[direct] review under the *Strickland* standard itself." *Id*.
Federal habeas review of ineffective assistance of counsel
claims is thus "doubly deferential." *Id*. (quoting C*ullen v.
Pinholster*, 131 S. Ct. 1388, 1403 (2011)). Federal habeas courts
must "take a highly deferential look at counsel's performance"
under *Strickland*, "through the deferential lens of § 2254(d)."
*Id*. (internal quotation marks and citations omitted).
Ineffective assistance of appellate counsel is judged by the
*Strickland* standard as well. *Albrecht v. Horn*, 485 F.3d 103, 137
(3d Cir. 2007) (quoting *United States v. Mannino*, 212 F.3d 835,
840 n.4 (3d Cir. 2000)).

Here, the state court's rulings on Petitioner's IAC Claim
were neither contrary to, nor an unreasonable application of,
*Strickland* and its progeny.

First, with respect to *Strickland*'s defective performance
prong, and as Judge Fox noted, "defendant cited no case holding
that defense counsel is required to advise the defendant of the
potential for civil commitment as a consequence to accepting a

plea to a non-predicate offense." (ECF 19-18 at 15.) "However,
[even analyzing] ... the performance of [Petitioner's] counsel
[under such] a [hypothetical] duty," this case still does not
demonstrate IAC "under *Strickland* prong one," as Judge Fox
ruled. (*Id*. at 16.) Petitioner "was advised of the potential for
civil commitment[.] [H]e understood it ... The defendant circled
'yes' on the supplemental plea form [indicating he understood
it] ... Even more compelling is that in [his] Petition for Post-
Conviction Relief[,] [Petitioner] wrote 'the court duly advised
defendant that his guilty plea as to count one attempting to
lure or entice a child, created a reasonable probability that
defendant may be civilly committed upon his release from
prison." (*Id*. at 15-16.) Indeed, Petitioner acknowledged to
Judge Solomon that he understood and accepted that risk, as
noted above.

　　In this situation, Petitioner has not demonstrated that
counsel's representation "fell below an objective standard of
reasonableness under prevailing professional norms taking into
account all of the circumstances." *United States v. Scott*, 664
F. App'x 232, 241 (3d Cir. 2016). In fact, Petitioner's very
specific contentions in his PCR brief and his own repeated
acknowledgments of his plea's implications at the December 15,
2008 hearing fatally undercut any suggestions either that: (1)

he was not informed about the potential for civil commitment, or (2) Ms. Jackson was somehow at fault for not informing him.

Since failure to satisfy either *Strickland* prong defeats an ineffective assistance of counsel claim, Petitioner's failure to demonstrate the deficient performance prong renders his IAC Claim fatally defective -- even without demonstration of deficiencies in his prejudice showing. *See Strickland*, 466 U.S. at 697-98. Nevertheless, this Court will also discuss *Strickland*'s prejudice prong, since the PCR trial court considered that issue.

As noted *supra*, Petitioner's IAC Claim is "that Ms. Jackson failed to advise him of the consequence of civil commitment upon completion of his sentence." (ECF 19-18 at 12.) Judge Fox noted that Petitioner "had the choice between accepting a plea to second degree attempting to lure or entice a child for which [he] received five years [in] New Jersey state prison, 85 percent parole ineligible as part of the sentence, or proceeding to trial on a 15 count indictment, 12 counts of which are predicate offenses under the Sexually Violent Predators Act ... Additionally, [he] would have had to consider the potential effect and exposure of his own admissions and his prior criminal record, provided they could have been used at trial." (ECF 19-18 at 16-17.)

Petitioner thus contends that counsel failed to advise him of all the consequences of his plea[2], and that if he had received this information, he would not have entered a guilty plea. (ECF 20-2 at 10-11 and at 32-33 ("On December 13, 2008, Petitioner engaged in a[n] out-of-court verbal discussion with his assigned public defender ... Trial counsel conveyed information that it was unlikely that the State would initiate civil commitment proceedings against him because the section of the plea form regarding civil commitment was only a 'formality'").)

In this situation, Petitioner "must show that there is a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also Strickland*, 466 U.S. at 694 (a "petitioner must demonstrate that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome").

However, Petitioner has expressly acknowledged that "because of health concerns, he had no desire to remain in the

---

[2] Petitioner's criticism rings hollow, in any event. Petitioner expressly acknowledged both by his signature on the Supplemental Form (ECF 19-4 at 8) and by his verbal testimony under oath that he understood the civil commitment implications of his guilty plea. (ECF 19-18 at 15-16.)

custody of CCCF for another two (2) years [awaiting trial]."

(ECF 1-2 at 5.) That acknowledgment is inconsistent with any

purported contention that he would have insisted on going to

trial but for counsel's advice.[3] Furthermore, it is reasonable to

think that Petitioner would *not* have wanted to proceed to trial,

considering the risk that his prior offense history could be

introduced against him. (ECF 19-7 at 2-4 (referring to "four

prior circuit court convictions in Florida" involving "similar

kinds of [sexual misconduct] offenses"; noting the "similarity

---

[3] The Third Circuit has held that "a defendant must make more
than a bare allegation that but for counsel's error he would
have pleaded not guilty and gone to trial." *Rice v. Wynder*, 346
F. App'x 890, 893 (3d Cir. 2009). This Court notes the following
observations from the record with respect to Petitioner's
burden. First, Petitioner has not submitted to this Court an
affidavit from any third persons, such as trial counsel,
regarding the content of their December 13, 2008 meeting.
Second, the declaration that Petitioner himself executed and
filed with his traverse relates exclusively to the issue of
expiration of his criminal conviction. (ECF 20-1.) Finally,
Exhibit Two appended to his § 2254 Petition expressly purports
to be a five-page continuation of his answer to Petition
Question 12(a) regarding 2007 – 2009 procedural events. (ECF 1-2
at 5-8.) While the filed copy of Exhibit Two is missing page
five (ECF 1-2 at 8-9), its content regarding December 2008
appears complete in its chronological sequence of events. It
does not make any allegations regarding trial counsel's plea
advice or Petitioner's intent to proceed to trial. (ECF 1-2 at
7-8.) Even if Exhibit Two had alleged that Petitioner would have
gone to trial but for counsel's alleged mis-advice, his
unsupported assertions would have been insufficient to sustain
his habeas claim. *See Rice*, 346 F. App'x at 893. In any event,
Exhibit Two in relation to *Strickland* prejudice is not
dispositive of Petitioner's IAC Claim. Petitioner has not
demonstrated *Strickland*'s deficient performance prong, as
discussed *supra*.

and the recurrence of [Petitioner's] prior [sexual] offenses";
referring to "a pending charge out of Dover for [Petitioner's]
failure to register [as a sex offender]"; and stating that
Petitioner has served "substantial periods of incarceration[,]
and despite that[,] he continues to engage in those kinds of
activities").) Nowhere does Petitioner claim he is not guilty or
otherwise had viable defenses to the many charges he would have
faced at trial.

Accordingly, the PCR court's decision that Petitioner
failed to demonstrate prejudice is consistent with *Strickland*
and its progeny. Petitioner's case is, in fact, analogous to the
facts in *Brown v. Goodwin*, No. 09-211, 2010 WL 1930574, at *1
(D.N.J. May 11, 2010), where petitioner "assert[ed] that his
trial counsel failed to inform him about the possibility of
civil commitment upon expiration of [his] prison term." *Id*. at
*12. The *Brown* state courts examined materials similar to those
that exist in Petitioner's case:

> (a) [T]he plea forms and supplemented plea
> forms executed by Petitioner (and these plea
> forms, indeed, duly notified Petitioner of
> the possibility of civil commitment);
>
> (b) Petitioner's trial judge's questions to
> Petitioner verifying that Petitioner's
> attorney had explained everything on the
> plea forms to Petitioner, and Petitioner's
> affirmation of the same;
>
> (c) Petitioner's acknowledgment that he was
> subject to confinement at Avenel, if a

> > psychological examination revealed that his
> > conduct was characterized by a pattern of
> > repetitive and compulsive behavior; and
>
> > (d) [T]he prosecutor's statements made
> > during the plea hearing reviewing the terms
> > of the plea agreement and stating that
> > Petitioner could be civilly committed upon
> > expiration of his prison term.

*Id.* at *12. From these materials, the *Brown* state courts "made factual finding that Petitioner was adequately informed of the possibility of civil commitment at the conclusion of his penal sentence." *Id.*

The *Brown* petitioner "offer[ed] th[e] [habeas] Court no evidence whatsoever, and certainly no clear and convincing evidence, suggesting that th[e] [state courts'] factual finding was erroneous." *Id.* The *Brown* petitioner's assertions, analogous to those of Petitioner herein, were "limited to a bold conclusion 'that counsel was ineffective for failing to inform [Petitioner,] before he pled guilty[,] that he faced a probability of indefinite civil commitment.'" *Id.*

"However, [the *Brown*] [p]etitioner's loss of excitement about the deal he made, or his assertion that he was entering his plea without 'sufficient understanding of penal consequences,'" did "not provide th[e] [*Brown*] Court with any evidence that Petitioner was uninformed of the possibility of civil commitment." *Id.*

Petitioner's claim here suffers the same fatal shortcomings. Petitioner having signed the plea form and supplemental form, his having responded to the sentencing court's express questions about plea implications, and the prosecutor having expressly referenced at the sentencing hearing the possibility of commitment, Petitioner here, as in *Brown*, cannot under these facts "show that there is a reasonable probability that, but for counsel's [alleged] error[] [in not advising about commitment potential], he ... would have insisted on going to trial." *Hill*, 474 U.S. at 59. In short, Petitioner *knew* about civil commitment possibility. *See also Connolly v. United States*, No. 14-3574, 2017 WL 396540, at *3 (D.N.J. Jan. 30, 2017) ("Sixth Amendment claims fail even where a defendant has been misled by counsel about the severity of a sentence permitted by a plea agreement, so long as the defendant acknowledges to the sentencing court that he understands the implications of his plea") (citing *Fahfleder v. Varner*, 32 F. App'x 621, 622 (3d Cir. 2002) and *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001)).

For all of these reasons, Petitioner has not shown that the PCR trial court's opinion regarding his IAC Claim (ECF 19-18 at 15-17), or the Appellate Division's affirmance (ECF 19-23), were contrary to, or an unreasonable application of, federal precedent.

## V. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), Petitioner may not appeal from a final order in this habeas proceeding where Petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A [habeas petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the petition, the Court shall deny Petitioner a certificate of appealability.

## VI.   <u>CONCLUSION</u>

For the reasons stated above, the Petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


<u>March 27, 2019</u>                    <u>s/ Jerome B. Simandle</u>
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge